# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT ALLEN BOCKOVEN,<br><br>Defendant. | Case No. CR11-2003<br><br>ORDER FOR PRETRIAL DETENTION |

On the 1st day of February, 2011, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Marti Sue Sleister. The Defendant appeared personally and was represented by his attorney, Michael M. Lindeman.

## RELEVANT FACTS

On January 11, 2011, Defendant Scott Allen Bockoven was charged by Indictment (docket number 2) with being a domestic abuser and felon in possession of a firearm. Defendant entered a plea of not guilty and trial is scheduled before Chief Judge Linda R. Reade on March 28, 2011.

BATF Special Agent Michael Wempen testified regarding the circumstances underlying the instant charges. On December 7, 2009, the Floyd County Sheriff's Office executed a search warrant at Defendant's residence. The officers found a shotgun in Defendant's garage attic. Initially, Defendant claimed that the shotgun was in the garage attic when he moved into the residence. Later, Defendant admitted that the shotgun was originally in his car, but he moved it into the attic because he "knew he couldn't have it." Special Agent Wempen also testified that Defendant's criminal history includes domestic abuse and felony convictions.

1

According to the pretrial services report, Defendant is 38 years old. Defendant reported to the pretrial services officer that he has lived most of his life in the area around Fort Dodge, Iowa. Defendant is currently single, but was married once in the past. He has one son from a previous relationship. He currently resides in Rudd, Iowa, with his ex-wife, her two daughters, and his son.

About eight months ago, Defendant was laid-off from Curries, a metal door manufacturer in Mason City, Iowa. He began employment at Curries in 2007. Since being laid-off, he has worked at Graham Manufacturing and a Village Inn Restaurant.

Defendant is in good physical health and reported no past or present mental health or emotional concerns. A presentence investigation report filed in a state court action in Webster County stated, however, that on two occasions in 1996, Defendant was admitted to a hospital for treatment of methamphetamine withdrawal, alcohol abuse, psychosis, major depression, and making suicidal statements. Defendant reported that he consumed alcohol to the point of intoxication at least once a week from the late 1990s until 2003. Defendant admitted that he "still likes to drink," but claims he consumes alcohol in moderation. Defendant stated that he experimented with marijuana in 2003, but has not used marijuana since that time. Defendant's ex-wife reported, however, that she and Defendant had used marijuana as recently as March 2010. Furthermore, the Webster County presentence investigation report provides that Defendant began using marijuana at age 13, and used it on a daily basis until at least 1999. Defendant stated that he experimented with methamphetamine in 2000, but the Webster County presentence investigation report indicates that Defendant began using methamphetamine at age 17, and that he used it on a daily basis when it was available. Defendant reported that he underwent alcohol abuse treatment in 1994. The Webster County presentence investigation report provides that Defendant underwent treatment for alcohol abuse and methamphetamine abuse in 1987, 1991, and 1996.

In 1989, Defendant was convicted of operating a motor vehicle while intoxicated. He was placed at the Iowa Training School for Boys. While at the Iowa Training School

for Boys, Defendant escaped on two occasions. He was paroled, but later had his parole revoked. He was discharged on July 25, 1990, when he turned 18 years old.

On April 15, 1991, Defendant was charged and later convicted of second degree attempted burglary. He was sentenced to 5 years in prison. On July 12, 1992, he was charged and later convicted of voluntary absence (escape). On March 11, 1993, while he was absent (escaped) from prison, Defendant was charged and later convicted of interference with official acts. He was returned to prison on March 24, 2003. He was paroled to immediate discharge on March 4, 1994.

In 1994, Defendant was charged and later convicted of fifth degree theft on two separate occasions . He was also charged and later convicted of operating a motor vehicle while intoxicated and assault, also on separate occasions. Defendant failed to appear for a court hearing on the operating a motor vehicle while intoxicated charge.

On August 24, 1995, Defendant was charged and later convicted of domestic abuse assault. He was found in contempt of court twice on that charge. He also failed to appear for a contempt hearing on that charge in 1997.

In 1996, Defendant was charged and later convicted of driving with a denied or revoked license on two separate occasions. He was also charged and later convicted of fifth degree criminal mischief. On one of his driving with a denied or revoked license charges, he failed to appear for court proceedings on two separate occasions. Similarly, on the criminal mischief charge, he also failed to appear for court proceedings on two separate occasions.

On June 18, 1998, Defendant was charged and later convicted of possession of an unlabeled drug. On June 26, 1999, while on release on the drug charge, Defendant was charged with domestic abuse assault, but that charge was later dismissed.

On April 17, 2001, Defendant was charged and later convicted of fifth degree criminal mischief. On August 2, 2001, Defendant was charged and later convicted of domestic abuse assault. He failed to appear for court proceeding on two occasions on that charge. On November 15, 2001, Defendant was charged and later convicted of two counts

3

of assault on a peace officer, interference with official acts while using or displaying a dangerous weapon, and driving with a denied or revoked license. He was sentenced to 5 years in prison on the interference with official acts while using or displaying a dangerous weapon charge. On May 26, 2004, Defendant was placed on work release. He was paroled on September 1, 2004. He was discharged from parole on November 22, 2005.

On November 10, 2005, while on parole, Defendant was charged and later convicted of driving with a denied or revoked license. On March 12, 2006, Defendant was charged and later convicted of interference with official acts. On the same date, Defendant was charged and later convicted of assault on a peace officer.

In March 2010, Defendant was charged and later convicted of domestic abuse assault and violation of a no contact order. In June 2010, Defendant was charged and later convicted of violation of a no contact order.

## DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). It must first determine by a preponderance of the evidence whether defendant has been charged with a certain type of offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

In seven enumerated circumstances, a judicial officer must hold a hearing to determine whether any release condition or combination of release conditions will reasonably assure the appearance of defendant as required and the safety of the community. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, serious drug offenses, and felonies involving minor victims. 18 U.S.C. § 3142(f)(1). The last two enumerated circumstances where a hearing is required involve "risk factors." 18 U.S.C. § 3142(f)(2). In this case, Defendant is charged with being a domestic abuser and felon in possession of a firearm, one of the offenses found in § 3142(f)(1). Also, the Government alleges a serious risk of flight.

If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). "Perhaps counter-intuitively, the government's evidentiary burden is lesser to prove a flight risk than to prove risk of harm." *United States v. Kisling*, 334 F.3d 734, 735, n.3 (8th Cir. 2003) (citing *Orta*).

In determining whether any condition of combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or

alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Turning to the facts in the instant action, Defendant is charged with being a domestic abuser and felon in possession of a firearm. The weight of the evidence against Defendant is strong. It is undisputed that Defendant has domestic abuse and felony convictions. While executing a search warrant on Defendant's residence, law enforcement found a shotgun in Defendant's garage attic. Defendant admitted moving the shotgun from his car to the attic.

Defendant has a substantial criminal record, including felony convictions and multiple violent offenses. Specifically, Defendant has been convicted of interference with official acts, assault, domestic abuse assault, assault on a peace officer, and violations of no contact orders. Defendant has a history of failing to appear at court proceedings. Defendant also has a history of committing offenses and failing to comply with conditions of pretrial release, probation, and parole. Based on the circumstances, including Defendant's history of violent behavior, failure to appear at court proceedings on at least eight different occasions, and failure to comply with conditions of release, probation, or parole, the Court has no confidence that Defendant would comply with any terms or conditions which it may impose for his release.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained

prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

**ORDER**

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (January 31, 2011) to the filing of this Ruling (February 1, 2011) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 1st day of February, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA